18-57-4. People for the Ethical Treatment of Animals and Animal Compounds in the United States Department of the Arts, Animals, and Health. This fire is the appellate for the appellate for the appellate. Thank you, Your Honor. Good morning. This case was not moved for two reasons. First, because with respect to the records that the USDA finally reposted in its reading room, the agency continues to withhold large amounts of information that the plaintiffs brought this case to obtain. And second, because of the voluntary cessation of unlawful conduct, exception to the Mootness Doctrine. As to the first category, when the agency finally reposted thousands of inspection reports in its electronic reading room that it had taken down, that had been up there for decades, for over a decade, and the agency took down on February 3, 2017, when it finally reposted those records, it redacted from those records huge categories of information that had already been in the records, but now the agency had decided to redact. And all of that information was information that my clients brought this case to obtain. And all of that information is still withheld from them, and therefore, for that reason, this case was not moot. Our complaint clearly covered all of the information that had been taken down from the website. Our relief asked for declaratory and adjunctive relief with respect to all of that information, and my clients still don't have access to all of that information. So there really can be no question, given that situation, that we have a live controversy here. As to the second reason, the voluntary cessation of unlawful conduct exception to the Mootness Doctrine, that also applies here, and demonstrates that the case is not moot, because what happened here was that after we brought the case, and after we briefed the motion to dismiss, the agency began reposting some, albeit not all of the information at issue, and most significantly, continued to take the position, which it takes before this court, that it has absolutely no obligation to disclose any of that information affirmatively in the reading room, and therefore, can take it down at will whenever it wants to. And for that reason, the agency simply can't meet its heavy burden to demonstrate that the unlawful conduct is not likely to recur, and it also can't meet its additional burden to demonstrate that its actions have completely and irrevocably eradicated the effects of the alleged violation. Again, we don't have the information. Just to see where we are, in a case such as this, where the government believes it never had any obligation to provide information, and it reverses that, it reverses its already giving the information, then it reverses that, and provides it, saying, we still don't have any obligation to do it. It can only be found non-moot by the court reaching the merits. That's right, Your Honor. Okay. That's right. I just wanted to make sure I understood the consequences of your theory. Yes, particularly, go ahead. So it's a set of cases where mootness really doesn't apply. Correct. It's rather odd that mootness doesn't apply in a case where government at least believes it's entirely voluntary. But what is your theory that there's any obligation on the part of the government to provide these materials? Well, our theory... You didn't address that in gray, but... I'm an orphaned Roman with powerful argument. You're asking what is our theory on the merits, Your Honor, of whether or not these documents are subject to the affirmative disclosure requirements? Yes. Well, our theory is that all of these records, which were for years affirmatively disclosed by the agency, in which the agency said it was obligated to affirmatively disclose, fall within the category of records... You said it was obligated to disclose? Yes, in several instances, yes. Yes, Your Honor. In fact, if you look at JA 186 and 177, you'll find two memoranda by agency officials in which they reach the conclusion that inspection reports and annual reports, which are the documents at issue here, are the kinds of documents that must be affirmatively disclosed because they have both been released under FOIA and they are frequently requested by requesters under FOIA. So, for that reason, and because... You said, when was that, though? JA 186? JA 176, I think it's JA 177 and 186 are the two memoranda. Is it 187? 186 may be the first page of that. Uh-huh. The other one was 177? Yes, it's actually, well, if you, sorry, let's start with the first one. If you look at 179, for the reasons set forth below, I conclude that the animal care reports, which are, you have to look at the beginning of the memo, which they're talking about are the inspection reports and the annual reports, qualify as records subject to multiple requests under e-FOIA and must be made available to the public via electronic means. So, that's one example of where the agency had previously determined that the information had to be affirmatively disclosed. And yes, the other one is, it begins on 186, but the pertinent language is on JA 188, where the agency is explaining that prior to September 11th, 2001, the animal care and FOIA departments determined that the animal care inspection reports and annual reports qualify as reading room records because of the continuing high interest from animal interest groups, as well as the general public. So, our position is that this information falls squarely within the category of records that subsection A2 of FOIA requires to be affirmatively disclosed. Where in the complaint do you allege that any of these documents have been released pursuant to a FOIA request under A3? Well, Your Honor, we, throughout the complaint, allege that all of the records at issue are required to be affirmatively disclosed, which encompasses all of the requirements that would apply to an affirmative disclosure. We also point out that the agency itself has made those determinations in the past, and therefore, that they have to be affirmatively disclosed. We didn't break it out into each of the categories of, well, we didn't mention the word release in the complaint. But I would say that in addition to, say, pleading in the complaint that these records are all subject to the affirmative disclosure requirements, when the government raised this issue below, we submitted additional information in response to their argument showing that, in fact, these documents have been released in the past and have been free to be disclosed. Well, we've demonstrated that they've been posted in the reading room under A2 in response to A3 requests. But you're talking about A3 requests dating back to 2004. I mean, I guess your theory really is that it goes on indefinitely. Right. Or through 2017, when we brought this case. Yeah. The agency itself, when these kinds of documents were requested, would point requesters to the reading room for them. That is clear. It's in their website. If you look at JA173, they say that on the website. If you look at the affidavit of Kevin Shea, who is the agency official who explains this in a declaration submitted in a different case, he explains that that's what they did. Instead of dealing with those requests, they sent the requester to the reading room. So, our position is that, with respect to everything that was certainly up there at the time, the inspection reports and the annual reports had already been released under A3, and therefore, by virtue of being put in the reading room in response to an A3 request, and therefore, we have certainly provided enough information on that. So, you don't take issue with the proposition that they have to be released in response to an A3 request? I thought your gray brief was arguing a different legal theory, that you don't need an A3 request if they're posted in the reading room. Yeah. Under A2, that counts as release regardless. Our argument is that, by virtue of being placed in the reading room, because the agency itself has determined these are the kinds of records that we have released routinely in the past, pursuant to an A3 request, and that will be routinely requested in the future, that those are the categories of records that have to be put in the reading room. And so, therefore, we have no issue with that. Now, I will say, Your Honor, if there's some, we don't think that issue is properly before this court, but the government has asked the court to reach it. If the court believes there's enough information to rule in our favor, we're all in favor of the court reaching it. But I will say, we have also sought discovery on this, because, of course, the agency is in a unique position to know which of these documents have been released under A3 in the past. And we've asked for discovery on that, and we've also challenged the district court's denial of our motion to take discovery as being moved. So, if there's any question about whether or not we have adequately alleged that these documents are released, or whether the court has jurisdiction over the matter because of that, we would say we are entitled to a remand so that we can take the discovery that we've requested. If you look at JA-177, I think it is. I may be mistaken about that. It's JA-143, which is our motion requesting the opportunity to take discovery. We make it very clear that we want to take discovery on the issue of whether or not the information at issue, if that qualifies for further disclosure, because it meets the criteria under the statute. So, I think you could rule in our favor on that if you want to, but you certainly can't rule against us. I think we would be entitled to a remand to make a further evidentiary record on that. I see my time is up. Further questions? Thank you. May it please the Court, I'm John Cappell from the Appellate Staff Services, U.S. Department of Justice, representing the Applebee's USDA and Animal and Plant Health Inspection Service. The district court correctly held that this case is moot by virtue of the reposting of the vast amount of the material sought, and the plaintiffs only raised a, they were only challenging the temporary wholesale removal of the documents. They were not challenging a policy. They were challenging a single action, and the reposting mooted that claim. As far as the A2, the nature of an A2 request goes, as Judge Katsas was emphasizing, the plaintiff, documents can only be disclosed or only fall within A2 if they have previously been the subject, they have been released under A3, and the plaintiffs haven't even alleged, they have not alleged anywhere in their complaint that that was the case. Well, the claim, as I understand it, is that the postings on the website and memoranda that they have indicate that the agency has decided that these are frequently under request, and therefore they should go into the reading room. And I'm not sure if I fully understand the theory, but it seems to run indefinitely, in the sense that it's not clear what could cut it off. Well, that's, I think that's correct, Your Honor. It isn't clear what can cut it off, but again, there's no, even with respect to the 2003 and 2004 memoranda, there's no actual statement in those memoranda that these, the records, the same records we were talking about here have been subject to, have been released under A3. And also in, I believe it was June of 2009. Can we, I mean, we're only at the complaint stage here. Yes. Can't we, isn't it plausible, they have a, for example, paragraph 22. In the past, USDA has acknowledged that the facility inspection reports were the most frequently requested AFIS reports under the FOIA, and that making them available on our website will go a long way toward informing the public, et cetera. Isn't it at least plausible that if they are the most frequently requested AFIS records under FOIA, that they were actually released under FOIA? It seems not an enormous jump, logical jump. And for, simply for purposes of plausibility in the complaint, that seems like enough. Well, Your Honor, I don't think it really would be enough, because there still has to, there has to be an actual allegation that it was, that the requirements of A3 were met. They made that allegation. They allege that these are covered by the reading room requirement. Then you say in response, well, you have to allege every element of what that requirement is. I'm not sure that's the law. But even if it is the law, they've alleged something that makes it plausible, that they've been requested. And unless the government's position is we normally deny all FOIA requests, even though, you know, we acknowledge that they're the most frequently requested ones, and that as a result we're putting them in the reading room, which seems like a surprising denial for the government to make, this seems like a very plausible argument. Now, they may turn out to be wrong. I understand that. But we are only, right now we're talking about the merits. I want to go back to the mootness for a minute. But I don't understand why that's insufficient for purposes of the complaint. Well, Your Honor, it's insufficient because the record makes clear that what the agency was talking about both in 2003 and 2004 and in the 2009 publication, which was the most recent statement concerning its approach to this matter, is that the documents were being put up voluntarily. Now we're on a different question. We're no longer on the merits. Now you're going back to mootness. On the merits question, they were frequently requested under FOIA. The fact that the government then produced them under FOIA and put them in the reading room, whether it was voluntary or not, doesn't have anything to do with the reading room elements. But, again, there's no showing that they were released under A3, which is the authority. It doesn't matter which way they were released as long as they were requested under FOIA and put in the reading room? No, Your Honor. It has to be under in response to an A3 request. Why do we have to? This seems like a lot to expect in a complaint. It says they were the most frequently requested. You mean you think the complaint has to say were most frequently requested under A2? It has to say that it met the requirements. Well, they did have an allegation that they are required under the reading room requirement. Now, then what are those requirements? Well, the requirement is it applies to copies of all records, regardless of form or format, that have been released to any person under Paragraph 3. Yes, but I'm just asking whether it's necessary to specify that, to go to that level of detail in making an allegation on a complaint. Yes, Your Honor. We believe that it is. I understand your position. Now, on the mootness question, first on the question of voluntary cessation, has the government, has any government official of this agency said that from now on they intend to produce these documents and put them on the website in a reading, as a matter of, under their reading room? Your Honor, that was essentially their unbroken practice until. That's fine. That's fine. But has any agency official said that that will be their practice in the future? I. The answer is no, right? I don't think there's anything specific in the record that. No, there's nothing specific or vague. That is, it's not enough to say we did it in the past, period. I understand the argument that the government should be given some presumption. I understand that argument, but all of those cases are ones in which the government said we're going to do this in the future. We don't have any affirmative statement like that here. We don't even have an affirmative statement from you, that is, from a lawyer of the Justice Department, which I doubt would be sufficient anyway. But we have no statement from the government agency involved that they plan on doing this in the future. So I don't understand how that gets around voluntary cessation. Well, again, there's no reasonable expectation that this will recur. Well, the reasonable expectation is. Just because the history of this. Well, this is a. Obviously, there's a new administration. A new administration makes changes. A new administration may be entitled to make changes. And the fact that all previous administrations have done it one way, and then suddenly it was cut off. Maybe the new administration will continue. Maybe it won't. It would have been easy to have an affidavit from a government official of this agency say we intend to follow the old practice. Trust us. We don't have that. Well, Your Honor, that's because of the way this case was litigated and decided. The district court essentially co-responded. Yes. Well, there's a problem with that, I guess. But you could have. You could have put in. Without that evidence, the question is whether the district court was correct in doing this. I mean, I understand that we should. The argument on how far it goes, I don't know. That the government has given more credit with respect to its promises than a private. But there is no promise here. That's the problem. There's no promise at all. Now, what about on the redacted information? They asked for all of this information. You gave them some, not all. Why isn't at least the redacted information issue not moot? As the district court held, that's not what this case was about. The case was about the wholesale removal of the. Well, that doesn't seem. I don't understand. I mean, we should read the complaint with some sympathy for the complainants. And they are asking for all information. I don't understand why we should read. How could they possibly have known that the response was going to be to produce some but not all of the information? I don't understand what more they could have said. They said we want all of the information that was up before. Make all such records that have been removed available. That's what it says in the complaint. And all such information, all such records have not been produced. Only parts of them. Well, Your Honor, that's precisely the point. This case was not about redactions. That was because there were no redactions before. Or if there were, they were asking for the document as previously redacted. Well, the plaintiffs, they were certainly free to amend their complaint once it became clear that all of the stuff, all of the material had been released. But it hadn't been all released. This is what I don't understand. I'm reading this complaint, and I can't read it the way you're reading it. So the question is, what's a reasonable reading of the complaint? And if a reasonable reading is that they wanted all the material that was in the document to begin with, then it's not moot. The Court can't rewrite the complaint and then declare it moot. Well, Your Honor, it's certainly moot with respect to the material that was released. Okay. Well, that's a separate question. I understand that. And that goes to the voluntary cessation question. But Ms. Meyer also raises the redaction question. And I don't think you have an answer as to redacted material. Well, we're relying on the district court's statement in, I believe it's on page 7, footnote 3, of its opinion that this case was not about redactions and that the plaintiffs are free to pursue a claim regarding redactions. When somebody says the case is not about redactions, the only basis for that can be the complaint, since that's what's been dismissed. Right. And the complaint asks for all such records. And it talks all about the information that they need, licensees' addresses, et cetera, et cetera. They explain why they need that information and how they've used that information. And they had already received the vast majority of that. The only thing that was redacted was personal privacy information. Mootness is resolved by producing the vast majority of what was requested. Well, it does make it moot with respect to the material that was requested. Except for their future claims. So they also have a claim for the future, right? Yes, Your Honor, they do. This Court made clear in Crewe that future claims are essentially disfavored. There has to be some reason to believe that the agency would be delinquent. Yeah, right. Now we're back to the voluntary cessation question. And for that, I guess I would have liked to have seen some affidavit that we're going to continue producing this information now, and we don't see it. Well, we can't. Your Honor, I'm sorry. I guess I'm just asking the same question too many times. It's not fair to you. I apologize. Are there further questions? Just back to the merits for just a second. Suppose there is an A3 FOIA request and the government looks at it and either thinks it's exempt or, yeah, you think it's exempt, but you don't really care. You're willing to make a discretionary release. And in response to that FOIA request, you just put the document in the reading room, even though you think it's covered by an exemption. Would that count as a release under Paragraph 3 within the meaning of the reading room provision? Your Honor, I think it probably would as long as it was done under A3 and it meets the requirements. If the agency determines that it was likely to be requested and that there was sufficient public interest to warrant it under the first prong of A2D, that probably would be sufficient. So then what's wrong with their merits theory, which is a combination of the fact of prior postings in the reading room combined with, in some general sense, the fact of prior A3 requests? Well, the problem is with the fact of some general sense of an A3 request. That's not sufficient to comply with the statute. There has to be an actual showing and an allegation at least to that document by document. Document by document, yes. Or even categorically, there still has to be an allegation that documents were released pursuant to A3 before the claim can withstand scrutiny. Further questions? If there are no further questions, I urge the Court to adjourn. Thank you. Is there any time left? We'll give you another two minutes. Thank you. Just a couple points. The reason you can't get the assurance from the government that you asked for, Judge Garland, is because the agency takes the position that it has complete discretion as to whether or not it's going to post these categories of records. No, I understand that position, and I understand in Knox the unwillingness to concede the law is a reason that the exception applies. I understand the government to be arguing, well, they get a special case because they're the government and they don't need that. And I'm assuming for purposes of argument only for that, that they're right about that. But even if the government takes the position that it's in our discretion, the government can decide to disclose things that they don't have to disclose. White House logs, for example. Some administrations have released them. Some haven't. They've all taken the position they don't have to. But if they say they're going to be doing it, and say they're going to be doing it for the duration of their administration or whatever it is, there's an argument that we should presumptively accept, at least for that period. The reason I'm asking this question here is that they're not even making that argument. Correct. So that even if we were to accept the government's argument about, you know, paying more attention to their promises than private parties, the discretion thing alone, if we accept that argument, wouldn't solve your problem. Because somebody can voluntarily agree to do something that they don't have to do, and they can promise to voluntarily do that into the future. That's right. But we don't have the second component here. The second component being? Any assurance from the government that it's going to continue to post these records in the future. That's right. There are a lot of expressions of intent to continue posting. Your Honor, I think the best, I think the Knox case is very helpful, the Supreme Court's case. No, Judge Williams is asking, are there expressions of intent? 235 of the joint appendix. Well, let me see what they say. There's a set of different categories which treated slightly different wording for each of them. But let me. But for many of them, it says the government intends to continue doing this. 235? Yeah. Oh, their report to the court? Well, they may say they intend to, but at the same time, they say they can take it down whenever they want to. And I guess the better case, the other case. It seems to me that if they are in an area where they have a choice, you're demanding that they, in order to bring a litigation to an end, they give away a choice that they believe they have. I'm just not sure. Well, our clients have challenged. Well, for the foreseeable future, there's actually no conflict. Well, Your Honor, our clients, this is on a motion to dismiss. Our clients have challenged the lawfulness of their position that they have the discretion to post these documents. Our position is they don't have the discretion. They're required by the affirmative disclosure requirements to post these records. That's our theory of the case. And so the question is, is their decision to discretionarily post those records, has that somehow moved out the case? And then you get to the question of whether or not we have the voluntary cessation principle that applies here. And given that the government has not made any assurances at all that they're going to continue to disclose these categories of records, let me rely on the Payne Enterprises case, because I think that is really directly on point. That's a D.C. Circuit case in which an agency official had actually put in an affidavit that the agency was going to continue now to process the plaintiff's request, the plaintiff was complaining about delays in processing requests. And this Court said, no, that is not enough of an assurance that this is not going to recur again. I thought you might answer. I'm looking at this now. It is true that as to one category, annual reports, they say they intend to continue. But the others, conspicuously, they do not say that they intend to continue. They just say APHIS is now posting. Right. Especially with the... I'm not sure what to take from the... Inspection reports, in particular. And also with the list of entities licensed. Right. So I think we squarely meet the criteria of the voluntary cessation here. And again, it's the government. The government bears a heavy burden to demonstrate... Maybe the problem is that we need more factual development as to what the government's actual position is. It's true. The District Court had no briefing on this at all. The District Court just sua sponte dismissed the case. It's moved. So there was no briefing by any of the parties on this issue. All right. We'll take another submission. Thank you all.
judges: Garland, Katsas, Williams